UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| CINDY TRIPP and<br>LYLE TRIPP, | )<br>) | CIV. 09-4023-KES |
| | ) | |
| Plaintiffs, | ) | |
| | ) | ORDER DENYING DEFENDANT'S |
| vs. | ) | MOTION TO BIFURCATE AND |
| | ) | MOTION FOR PARTIAL |
| WESTERN NATIONAL MUTUAL<br>INSURANCE COMPANY, | )<br>) | SUMMARY JUDGMENT |
| | ) | |
| Defendant. | ) | |

Defendant, Western National Mutual Insurance Company, moves to bifurcate the breach of contract claim from the first-party bad faith insurance claim and to stay discovery on the bad faith claim until the breach of contract claim is resolved. Western National also moves for partial summary judgment on the bad faith claim. Plaintiffs, Cindy Tripp and Lyle Tripp, resist both motions.

## BACKGROUND

On September 12, 2004, Cindy Tripp was involved in an automobile accident with Jeffrey Christensen; Cindy was hit from behind by Christensen. Tripps were insured by Western National. They informed Western National of Cindy's accident in a timely manner and initiated a negligence action against Christensen. Cindy kept Western National informed about the facts and legal proceedings as they developed. On March 1, 2007, after initiating the action

against Christensen, Tripps provided written notice to Western National that it was "reasonably anticipated that your insured will be claiming UNDERINSURED MOTORIST BENEFITS provided by her policy of insurance issued by Western National Mutual Insurance Company. You are hereby notified of that potential claim."[1] (Docket 37-5, Ex. D at 24.) Western National did not conduct any investigation with regard to the underinsured motorist claim throughout the proceedings against Christensen. (Docket 37-3, Ex. B at 11-13.)

On October 8, 2008, Tripps settled the claim against Christensen for $87,500.[2] Western National was given a reasonable time to substitute its draft of a settlement in order to preserve its rights but informed Tripps that it would not be substituting its draft for the settlement.

On January 15, 2009, Tripps submitted to Western National a settlement demand in the amount of $150,000, which represented the policy limits of Tripps's underinsured motorist benefits.[3] (Id. at 118-20.) The

---

[1] Western National's records acknowledged the existence of the pending underinsured motorist claim on March 6, 2007. (Docket 37-6, Ex. E at 8.)

[2] Both parties agree that the settlement agreement represented the "best settlement" that could be reached with Christensen. See Schultz v. Heritage Mut. Ins. Co., 902 F. Supp. 1051, 1057 (D.S.D. 1995) ("Where the best settlement available is less than the tortfeasor's liability limits, the insured should not be forced to forego settlement and go to trial." (citation omitted)).

[3] Christensen's insurance policy had a $100,000 liability limitation. Tripps's policy limit for underinsured motorist benefits was $250,000. As a

2

settlement demand was supported by a treating physician's report that indicated that Cindy suffered from a 10 percent whole permanent impairment as a result of the accident and a report from Tripps's economist that Cindy's future lost income and medical expenses, reduced to present value, was between $296,103 and $312,920. (Id. at 117-20.)

On February 2, 2009, after reviewing the information provided from Tripps, Western National responded with a letter that expressed concerns about not having received official IRS tax returns, past chiropractic treatments, and Cindy's role in her business, including how many hours she spent as a manager in comparison to providing hair styling services. (Id. at 124.) In the same letter that expressed those concerns, Western National offered Tripps $10,000 in settlement of their underinsured motorist claim. (Id.) Tripps filed this suit, which alleges a breach of contract claim and a first-party bad faith insurance claim, shortly after receiving Western National's settlement offer of $10,000.

## ANALYSIS

**I.    Motion to Bifurcate and Stay Discovery**

Western National seeks bifurcation of the breach of contract claim from the first-party bad faith claim during both the discovery phase and at trial.

---

result of the settlement agreement with Christensen, there was $150,000 in available underinsured motorist benefits under the Western National policy. See Schultz, 902 F. Supp. at 1057 (citations omitted).

Rule 42(b) states that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). In determining whether to bifurcate under Rule 42(b), consideration must be given to "the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion." O'Dell v. Hercules, Inc., 904 F.2d 1194, 1202 (8th Cir. 1990) (citing Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil, 704 F.2d 1038, 1042 (8th Cir. 1983)).

Western National argues that during the discovery phase, bifurcation of the breach of contract claim and the first-party bad faith insurance claim is appropriate because it would avoid prejudice that would result from having to produce certain documents in relation to the bad faith claim. Tripps argue that those documents have already been produced and, accordingly, there can be no prejudice. Western National has not responded to this assertion. Thus, Western National's concerns about any prejudice arising from discovery issues are unwarranted.

Western National also argues that bifurcation is appropriate because it would avoid prejudice at the trial stage. Western National argues that if the two claims are tried concurrently, the jury may be informed about the

settlement discussions in light of the Eighth Circuit Court of Appeals' decision in Athey v. Farmers Insurance Exchange, 234 F.3d 357 (8th Cir. 2000). In Athey, the Eighth Circuit Court of Appeals upheld the denial of an insurer's motion to bifurcate a breach of contract claim and a bad faith claim. Id. The court stated that "[a]lthough evidence of conduct during settlement negotiations generally is inadmissible to prove a party's liability for the underlying claim, it may be admitted 'when the evidence is offered for another purpose[.]'" Id. at 362. Western National argues that if the breach of contract claim was tried separately, then the jury would not be informed about any settlement discussions.

Western National incorrectly assumes that evidence about the settlement discussions would be completely barred if the breach of contract claim was tried separately. The Eighth Circuit's reasoning in Athey about the admissibility of settlement negotiations when the evidence is "offered for another purpose" not prohibited by Rule 408 would also apply in a breach of contract claim. See Fed. R. Evid. 408. For example, even if the breach of contract claim were tried separately, it is possible that evidence stemming from settlement negotiations could be admitted for the purpose of "proving bias or prejudice of a witness." Id. See also Bjornestad v. Progressive Northern Ins. Co., 2009 WL 2588286, at *3 (D.S.D. Aug. 20, 2009) (finding that settlement negotiation evidence was admissible under Rule 408 with

5

regard to both claims). Thus, Western National's argument that bifurcation would avoid admission of the settlement discussion evidence is without merit.[4]

Western National also argues that bifurcation would avoid any potential problem with regard to Tripps's attorney testifying about the settlement negotiations in relation to the bad faith claim. Tripps argue that neither Western National's initial disclosures nor responses to interrogatories list Tripps's attorney as a witness. And Tripps have not designated their attorney as a witness. Tripps also argue that there is no need for their attorney to testify because there were no verbal negotiations with regard to the underinsured motorist claim and because any evidence concerning those negotiations could be offered by other means. Western National has not responded to Tripps's arguments. Thus, Western National's concern about Tripps's attorney testifying is without merit.

Western National also argues that bifurcation would avoid jury confusion. Juries in South Dakota have successfully handled cases that have involved a concurrent presentation of a breach of contract claim and a bad faith claim. See, e.g., Athey, 234 F.3d 357. And Western National has not

---

[4] The Eighth Circuit Court of Appeals did not express any concern in Athey as to whether the evidence about the settlement negotiations impacted the jury's verdict for the breach of contract claim. See generally Athey, 234 F.3d 357.

demonstrated that this case involves unique issues that distinguishes it from other cases involving a breach of contract claim and a bad faith claim. Furthermore, there is a presumption "that juries can and do follow instructions conscientiously and evaluate the evidence before them carefully." [Bjornestad, 2009 WL 2588286, at *4](Bjornestad, 2009 WL 2588286, at *4). Thus, Western National's concern about jury confusion is without merit.

Western National argues that bifurcation would serve the interest of judicial economy. Western National reasons that if the jury found that there was no breach of contract, a trial on the bad faith claim would be unnecessary.[5] Western National also argues that there would be almost no overlap in the evidence relating to the breach of contract and the bad faith claims. Tripps argue that separate trials would add substantial delay before they would be made whole and that any delay would be accompanied with additional expense. Tripps also argue that their claims, and the supporting evidence for their claims, are intertwined as demonstrated by the fact that Western National has not distinguished between witnesses that have separate information about the breach of contract claim as compared to the bad faith claim.

---

[5] Western National also argues that discovery in relation to the bad faith claim would be avoided as well. The discovery process with regard to the bad faith claim, however, has already been completed.

Both parties' arguments with regard to judicial economy are premised on the outcome of the case, which is uncertain at this time. If Western National were to prevail on the breach of contract claim, then presumably there would be no need to adjudicate the bad faith claim.[6] If, however, Tripps are ultimately successful on their bad faith claim, then bifurcation would add delay and expense associated with two trials. Thus, neither party has the better argument in this respect.

The court finds that bifurcation is not necessary in the interest of judicial economy because the discovery process has been completed with regard to both of the claims, and the discovery deadline, January 4, 2010, has passed.[7] Furthermore, the court finds that the presentation of any additional evidence relating solely to the bad faith claim would not add substantial time to the presentation of evidence at trial, and thus, the interest of judicial economy would not be furthered by bifurcating the trial. Western

---

[6] Western National argues that bifurcation of the breach of contract claim and the first-party bad faith insurance claim is appropriate because one cannot recover under a bad faith claim unless there is a breach of contract. Cf. Zuke v. Presentation Sisters, Inc., 589 N.W.2d 925, 930 (S.D. 1999) ("Before a trial court may grant relief for a bad faith denial of worker's compensation benefits, it must decide whether the plaintiff is entitled to benefits."). The South Dakota Supreme Court's holding in Zuke, however, did not pertain to the issue of bifurcation. While South Dakota law appears to require that a plaintiff be entitled to money under the contract before a plaintiff can recover under a bad faith claim, it does not follow that there must be two separate trials.

[7] Western National did not discuss any concerns about bifurcation at the planning meeting on April 24, 2009, or mention bifurcation in its Form 52 Report.

National's motion to bifurcate the bad faith claim from the breach of contract claim is denied. Similarly, Western National's motion to stay discovery of the bad faith claim until the breach of contract claim is resolved is denied as moot.

## II.    Partial Summary Judgment

"Summary judgment is authorized if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." [Dakota, Minnesota & Eastern R.R. Corp. v. Acuity, 771 N.W.2d 623, 628 (S.D. 2009)](citing [Schwaiger v. Avera Queen of Peace Health Servs., 714 N.W.2d 874, 877 (S.D. 2006)]). "All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law." [Id. at 628]. " 'The non-moving party, however, cannot merely rest on its pleadings; it must point to specific facts which establish a genuine, material issue for trial. Mere allegations are not sufficient to avoid summary judgment.' " [Id. at 629] (citation omitted).

Recently, in [Dakota, Minnesota & Eastern Railroad Corp. v. Acuity, 771 N.W.2d 623 (S.D. 2009)], the South Dakota Supreme Court articulated the

9

test for whether summary judgment is appropriate for a first-party bad faith claim.

> [T]here must be an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] and the knowledge or reckless disregard [of the lack] of a reasonable basis for denial, implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured.

Id. at 629 (quoting Walz v. Fireman's Fund Ins. Co., 556 N.W.2d 68, 70 (S.D. 1996) (alteration in original)). "Bad faith conduct may include the failure to conduct a reasonable investigation concerning the claim." Id. (citations omitted). "Denial of benefits may be inferred from the insurer's failure to process or pay a claim[.]" Kirchoff v. Am. Cas. Co., 997 F.2d 401, 405 (8th Cir. 1993) (applying South Dakota law) (citation omitted).

"[A]n insurance company, however, may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." Dakota, Minnesota & Eastern R.R. Corp., 771 N.W.2d at 629. "The issue is determined based upon the facts and law available to the insurer at the time it made the decision to deny coverage." Id. "The question of whether an insurer has acted in bad faith is generally a question of fact." Id. at 629-30.

10

When Tripps requested settlement in the amount of the $150,000 policy limits, Western National had information that the present value of Cindy's future loss of income and medical expenses alone were between $296,103 and $312,920. Western National had little to no information that disputed those projections at the time it rejected the settlement demand by offering $10,000.[8] Western National failed to investigate the pending underinsured motorist claim for almost two years prior to rejecting the settlement demand.[9] Furthermore, Western National did not ask Cindy to submit to an independent medical exam before rejecting her claim. A jury could consider the lack of an investigation in determining whether Western National acted in bad faith in failing to pay the settlement demand of $150,000. See Dakota, Minnesota & Eastern R.R. Corp., 771 N.W.2d at 629 ("Bad faith conduct may include the failure to conduct a reasonable investigation concerning the

---

[8] Western National's argument that it had questions about the validity of the claim stems almost exclusively from the fact that it had failed to investigate the claim. Western National's failure to investigate the underlying claim for almost four years, two years of which it knew of the pending underinsured motorist claim, cannot provide the basis for making Tripps's claim fairly debatable as a matter of law. Cf. Dakota, Minnesota & Eastern R.R. Corp., 771 N.W.2d at 629 ("Bad faith conduct may include the failure to conduct a reasonable investigation concerning the claim." (citations omitted)). If otherwise, an insurer would be encouraged to delay the investigation so that it could later argue that the claim was fairly debatable as a matter of law because it did not have sufficient information.

[9] Western National was made aware of the claim for underinsured motorist benefits on March 6, 2007, and offered $10,000 on February 2, 2009. (Docket 37-6, Ex. E at 1, 8.)

11

claim."). There is also a material issue of fact as to whether Western National's counteroffer of $10,000 was done in good faith in light of the information Western National had about Cindy's future loss of income and medical expenses and the fact that Western National's insurance adjuster "look[ed] at this claim as having a range of $120,000-150,000." (Docket 37-8, Ex. G at 2.) See [Arp v. AON/Combined Ins. Co., 300 F.3d 913, 919 (8th Cir. 2002)](#) (reversing trial court's grant of summary judgment because the insurer's offer of $12,151.16 was substantially below the insurer's "internal documents [that] valued [the] claim at well over $1,000,000.00."). Accordingly, a jury could reasonably find that Western National acted with "reckless indifference to facts or to proofs submitted by" Tripps when it rejected the $150,000 settlement demand with a $10,000 counteroffer. [Dakota, Minnesota & Eastern R.R. Corp., 771 N.W.2d at 629](#).

Western National argues that the settlement demand was fairly debatable because one of Cindy's treating doctors was on record in 2007 as doubting that the accident caused some of her complaints. That report expressed doubt as to whether the accident caused any injury to Cindy's "lower extremities." (Docket 32-9, Ex. H at 2.) Cindy's underlying claim, however, stems from the injuries associated with her neck and back. (Docket 37-8, Ex. G at 3; Docket 37-12, Ex. K at 29-30.) Thus, the doctor's doubts

about whether the accident caused any injury to Cindy's legs did not make the claim for $150,000 fairly debatable as a matter of law.

Western National also argues that the $150,000 claim was fairly debatable because it had information indicating that Cindy had previously received regular treatment from a chiropractor and that her doctor was well known to defense counsel in Sioux Falls as being plaintiff oriented. Those facts alone, however, are not sufficient to clearly demonstrate that the settlement demand of $150,000 was fairly debatable as a matter of law. See [Dakota, Minnesota & Eastern R.R. Corp., 771 N.W.2d at 631](#) (noting that the insurer "has the initial burden to 'clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law' " before summary judgment of a bad faith claim may be ordered (citation omitted)). Moreover, the fact that Western National was aware that Cindy received prior chiropractic treatment does not explain why the counteroffer of $10,000 was made when Western National's insurance adjuster "look[ed] at this claim as having a range of $120,000-150,000." (Docket 37-8, Ex. G at 2.)

Thus, Western National's motion for partial summary judgment as to the first-party bad faith insurance claim is denied because, at the time Western National rejected Tripps's settlement demand of $150,000 with a $10,000 counteroffer, Western National had information that Cindy's future loss of income and medical expenses alone were between $296,103 and

13

$312,920 and its insurance adjuster "look[ed] at this claim as having a range of $120,000-150,000."

Accordingly, it is hereby

ORDERED that Western National's motion to bifurcate and stay discovery of the first-party bad faith insurance claim (Docket 17) is denied;

IT IS FURTHER ORDERED that Western National's motion for partial summary judgment (Docket 28) with regard to the first-party bad faith insurance claim is denied.

Dated February 9, 2010.

                BY THE COURT:

                /s/ *Karen E. Schreier*
                KAREN E. SCHREIER
                CHIEF JUDGE