UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| CINDY TRIPP and<br>LYLE TRIPP, | ) <br> ) <br> ) | CIV. 09-4023-KES |
| Plaintiffs, | ) <br> ) | |
| vs. | ) <br> ) | ORDER GRANTING PLAINTIFFS'<br>MOTION FOR ATTORNEY FEES |
| WESTERN NATIONAL MUTUAL<br>INSURANCE COMPANY, | ) <br> ) <br> ) <br> ) | |
| Defendant. | ) | |

Plaintiffs, Cindy Tripp and Lyle Tripp, move for attorney fees under SDCL 58-12-3. Defendant, Western National Mutual Insurance Company, resists the Tripps's motion.

**BACKGROUND**

On September 12, 2004, Cindy, while driving her automobile, was hit from behind by Jeffrey Christensen. The Tripps were insured by Western National. They informed Western National of Cindy's accident in a timely manner and initiated a negligence action against Christensen. On October 8, 2008, the Tripps settled the claim against Christensen for $87,500.[1]

---

[1] Both parties agree that the settlement agreement represented the "best settlement" that could be reached with Christensen. *See Schultz v. Heritage Mut. Ins. Co.*, 902 F. Supp. 1051, 1057 (D.S.D. 1995) ("Where the best settlement available is less than the tortfeasor's liability limits, the insured should not be forced to forego settlement and go to trial." (citation omitted)).

On January 15, 2009, the Tripps submitted to Western National a settlement demand in the amount of $150,000, which represented the policy limits of the Tripps's underinsured motorist benefits.[2] Western National responded with a $10,000 offer to settle the Tripps's underinsured motorist claim. Shortly after receiving Western National's settlement offer of $10,000, the Tripps filed suit against Western National, alleging a breach of contract claim and a first-party bad faith insurance claim.

The jury returned a verdict in favor of the Tripps with regard to the breach of contract claim and awarded $150,000, which was the full amount of the insurance policy's limits for underinsured motorist benefits. With regard to the bad faith insurance claim, however, the jury returned a verdict in favor of Western National. The Tripps now move for attorney fees.

**ANALYSIS**

Under SDCL 58-12-3, "if it appears from the evidence that [an insurer] has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, . . . the trial court . . . shall, if judgment . . . is rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee[.]" The court must determine three issues before it can

---

[2] Christensen's insurance policy had a $100,000 liability limitation. The Tripps's policy limit for underinsured motorist benefits was $250,000. As a result of the settlement agreement with Christensen, there was $150,000 in available underinsured motorist benefits under the Western National policy. *See Schultz*, 902 F. Supp. at 1057 (citations omitted).

award attorney fees. "First, whether the insurance company refused to pay the full amount of a loss. Second, whether the refusal was vexatious or without reasonable cause. And third, what is a reasonable charge for the work performed to enforce the insurance contract claim, vis-à-vis any other claims jointly brought." *Biegler v. Am. Family Mut. Ins. Co.*, 621 N.W.2d 592, 606 (S.D. 2001) (citations omitted). The Tripps and Western National agree that whether an award of attorney fees is warranted in this case is a question of fact to be determined by the court.

With regard to the first element, Western National argues that the Tripps are not entitled to attorney fees under SDCL 58-12-3 because it made an offer of judgment under Rule 68(a)[3] in the amount of $140,500 on April 26, 2010. SDCL 58-12-3, however, precludes an award of attorney fees "when a tender is made by such insurance company . . . *before the commencement of the action* . . . and the amount recovered is not in excess of such tender[.]" SDCL 58-12-3 (emphasis added). Here, the only offer Western National made prior to the commencement of this action was for $10,000. The subsequent offer of $140,500 was made well after the commencement of the

---

[3] Rule 68(a) states in relevant part that "[a]t least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). "If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d).

action. Thus, Western National's subsequent offer of $140,500 on the eve of trial does not preclude an award of attorney fees. Because Western National refused to pay the full amount of the Tripps's loss prior to commencement of the action, the Tripps have proven the first element.

With regard to the second element, whether the refusal was vexatious or without reasonable cause, Western National argues that it had the right to challenge the amount of the Tripps's damages because the amount of damages was fairly debatable. The Tripps argue that the evidence proves that Western National's actions constitute vexatious conduct or an unreasonable refusal of an otherwise valid claim.

The South Dakota Supreme Court observed that the South Dakota statutes in this area are to be given liberal construction and "[t]he obvious objective of SDCL 58-12-3 is to discourage contesting insurance coverage and to reimburse an insured for any reasonable attorney's fees necessarily incurred in defending or enforcing a valid insurance contract right." *All Nation Ins. Co. v. Brown*, 344 N.W.2d 493, 494 (S.D. 1984) (citation omitted). Western National's own files reveal that the Tripps incurred attorney's fees to enforce their contract right to payment for their loss. As noted in Western National's claim file, its insurance adjuster, Jolene Craemer, "look[ed] at this claim as having a range of $120,000-150,000." Docket 37, Ex. G at 2. The only claim the Tripps had against Western National was for underinsured

4

motorists benefits. Thus, the reference to "this claim" by Craemer logically pertains to the Tripps's claim for underinsured motorist benefits. Because Western National valued the Tripps's underinsured motorist benefits claim at $120,000 to $150,000, Western National's settlement offer of $10,000 had no reasonable basis.

Western National contends that its "evaluation applied to Tripps' claim as a whole and not additional money beyond that being received in settlement from the at-fault driver." Docket 74 at 1 (citing Docket 37, Ex. G). Western National further contends that the "plan [was] to present a $10,000 cash offer along with a waiver of Western National's $5,000 subrogation claim *with an eye toward a negotiated compromise settlement in the $25,000 range*[.]" Docket 102 at 2 (emphasis added). According to the trial testimony though, the only actual offer conveyed to the Tripps, prior to the commencement of the lawsuit, was an offer of $10,000 with no reference to the waiver of the $5,000 subrogation claim.

If Western National's explanation is true, then according to Western National's own calculation of Tripps's losses, the Tripps were entitled to between $20,000[4] and $50,000. As a result, Western National's offer of $10,000 was *half* of the bottom end of the Tripps's losses. The Tripps

---

[4] The $20,000 figure is based on subtracting the tortfeasor's $100,000 policy limits from Craemer's bottom projection of $120,000.

purchased underinsured motorist coverage from Western National to cover losses that exceeded a tortfeasor's policy limits. Western National determined this amount to be *at least* $20,000. The Tripps did not purchase underinsured motorist coverage from Western National so that Western National could nickel and dime them and try to get its own insured to accept half of what it calculated the Tripps's losses to be. Simply put, if Western National determined that the Tripps suffered at least $20,000 in excess of the tortfeasor's policy limits, then the offer with regard to the Tripps's underinsured motorist claim should have been at least $20,000. The court finds that the offer of $10,000 under these circumstances constitutes vexatious conduct that entitles the Tripps to reasonable attorney fees under SDCL 58-12-3. *See Firemen's Ins. Co. v. Bauer Dental Studio, Inc.*, 626 F. Supp. 1365, 1367 (D.S.D. 1986) (awarding insured attorney fees partly because the insurer "tendered a settlement offer far below the amount due"), *aff'd*, 805 F.2d 324, 326 (8th Cir. 1986) (upholding the district court's finding of "vexatious conduct in the manner in which [the insurer] conducted the settlement negotiations").

Western National argues that the court should not award attorney fees because the jury rejected the Tripps's bad faith insurance claim. Western National, however, does not cite any authority to support the proposition that an award for attorney fees must be preceded by a finding of bad faith by the

jury. In fact, the federal district court in South Dakota has reached the opposite conclusion. In *Bjornestad v. Progressive Northern Insurance Co.*, 08-4105 (Docket 118) (D.S.D. 2010), Judge Jones awarded attorney's fees under SDCL 58-12-3 on the underinsured motorist breach of contract claim even though the jury found in favor of the insurer on the bad faith claim. And in *Brooks v. Milbank Insurance Co.*, 605 N.W.2d 173 (S.D. 2000), the South Dakota Supreme Court upheld the trial court's award of attorney fees under SDCL 58-12-3 despite the fact that the trial court had dismissed the bad faith insurance claim. *Id.* at 178. While the South Dakota Supreme Court reversed the trial court's dismissal of the bad faith insurance claim and remanded the issue back to the trial court, there was no indication that the awarded attorney fees hinged on the subsequent outcome of the bad faith claim. *Id.* at 177-78. Thus, the fact that the Tripps did not succeed on their bad faith insurance claim does not bar them from an award of attorney fees under SDCL 58-12-3.

Western National's conduct of offering $10,000 constituted vexatious conduct with regard to an otherwise valid insurance claim. This conduct caused the Tripps to go to court to "enforc[e] a valid insurance contract right," as demonstrated by the jury's award for the full amount of the policy limits. *See All Nation Ins. Co.*, 344 N.W.2d at 494. Therefore, the Tripps are entitled to attorney fees.

Finally, the court will consider the third element, which is to determine "a reasonable charge for the work performed on the breach of contract claim[.]" *See Biegler*, 621 N.W.2d at 606. "A bad faith claim 'is tortious in nature i.e., for the wrongful refusal to settle within the policy limits of its insured,' and not an action against an insurance company on a policy of insurance within the contemplation of SDCL 58-12-3." *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 763 (S.D. 1994) (quoting *Crabb v. Nat'l Indem. Co.*, 205 N.W.2d 633, 639 (S.D. 1973)). Thus, an insured is not entitled to recover attorney fees that were incurred to pursue a bad faith claim. *See id.* at 763 ("[T]he portion of attorney's fees related to the bad faith claim, as opposed to the contractual claim, should have been excluded.").

The Tripps's attorneys[5] have filed affidavits and time logs that set forth the attorneys' hours spent working in this case, with their deductions for time spent on the bad faith insurance claim. The net attorneys' total hours, rates, and subtotals are as follows according to Johnson, Heidepriem, & Abdallah, LLP: (1) Steve Johnson (116.58 hours x $300) - $34,974; (2) Ron Parsons (25.1 hours x $250) - $6,275; (3) Shannon Falon (65 hours x $200) - $13,000; (4) Pamela Bollweg (10.25 x $200) - $2,050; and paralegals: (45 hours x $90) -

---

[5] Mark O'Leary and the law firm of Johnson, Heidepriem, & Abdallah, LLP, represented the Tripps in this matter and have filed separate affidavits and time logs
.

8

$4,050. The net time, rate, and total amount of fees for Mark O'Leary is: (187.8 hours x $200) - $37,560. In all, the Tripps seek an award of $97,909 in attorney fees.

Western National argues that these fees are unreasonable because they include the time spent on written discovery matters and deposing Craemer. According to Western National, the deposition and almost all of the written discovery related exclusively to the Tripps's bad faith claim. Western National also argues that the Tripps should not recover any fees stemming from the time spent on the pretrial motions to bifurcate and for partial summary judgment on the bad faith insurance and punitive damages claims. Finally, Western National argues that the requested fees are excessive because its total defense fees were approximately $60,000 and the requested fees of Tripps's attorneys over represent the amount of time spent on the breach of contract claim.

The court has reviewed the attorneys' fees request in detail. The bills, in most instances, excluded the time spent on the motions to bifurcate and for partial summary judgment, except for 7.4 hours on O'Leary's time log. The fees and time spent by an insurer's attorneys do not dictate whether an insured's attorney's fees and time are reasonable because the insurer does not bear the burden of proof. Nonetheless, the court finds that some of the time spent throughout the proceedings, including discovery, trial preparation,

and the trial itself, is fairly attributed to the bad faith insurance claim. After reviewing the record and considering the arguments, the total fees will be reduced by approximately 30 percent. Thus, the court finds that the Tripps are entitled to $65,000 in attorney fees.

Accordingly, it is

ORDERED that the Tripps's motion for attorney fees (Docket 98) is granted, and the Tripps are entitled to a judgment against Western National for $65.000 in attorney fees. Judgment will be issued accordingly.

Dated November 17, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE